NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 240533-U

NO. 4-24-0533

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 7, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| DONTEL DEON CROWDER, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | McLean County |
| McLEAN COUNTY, ILLINOIS, a Unit of Local | ) | No. 20L173 |
| Government; THE McLEAN COUNTY SHERIFF; DR. | ) | |
| HUGHES P. LOCHARD, MD; and SUZANNE SCOTT, | ) | Honorable |
| RN; | ) | Rebecca S. Foley, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices DeArmond and Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed in part and dismissed in part, concluding (1) the circuit court properly granted defendants' motions for summary judgment where plaintiff failed to present a genuine issue of material fact for trial and no reversible errors occurred and (2) this court lacked jurisdiction to review claims that were dismissed without prejudice and with leave to refile.

¶ 2    Plaintiff, Dontel Deon Crowder, appeals from the McLean County circuit court's order granting summary judgment in favor of defendants, McLean County, Illinois, a unit of local government (McLean County); the McLean County Sheriff; Dr. Hughes P. Lochard, MD; and Suzanne Scott, RN. On appeal, plaintiff contends genuine issues of material fact existed with respect to each defendant such that they were not entitled to summary judgment, and therefore this court should reverse and remand the proceedings for trial. Plaintiff additionally argues the court erroneously granted defendant Dr. Lochard's motion to dismiss counts IV and V of his initial

complaint. We note defendants McLean County, the McLean County Sheriff, and Nurse Scott (County Defendants) have filed a separate responsive brief from Dr. Lochard. Collectively, all defendants respond the court properly granted their respective motions to dismiss and for summary judgment. We affirm in part and dismiss in part.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. Plaintiff's Injury

¶ 5            Plaintiff's claims arise out of an incident that occurred on December 9, 2018, after he was arrested by Bloomington police officers and taken into custody of the McLean County Detention Facility (jail). According to plaintiff, he suffered an injury to his left knee incident to his arrest prior to being booked into the jail. Following his injury, plaintiff claimed he informed two correctional officers, Sergeant Thomas McCormick and Officer Tyler Wahls (who are not defendants in this matter), of the injury suffered to his left knee while being booked into the jail. Both Sergeant McCormick and Officer Wahls advised plaintiff they would notify jail medical staff and put him on the list to be seen by a nurse.

¶ 6            During the time relevant to plaintiff's complaint, the jail contracted with on-site nursing staff and an outside physician, defendant Dr. Lochard of Advanced Correctional Healthcare, to provide medical care for those in custody. In serving as the jail's contracted physician, Dr. Lochard visited the jail once a week to see patients. During this same relevant period, defendant Nurse Scott was a registered nurse at the jail and employed by McLean County.

¶ 7            Later that same day, Nurse Scott saw plaintiff at nurse sick call. Nurse Scott noted plaintiff complained of pain when his left knee was bent backwards and when the outer aspect of the knee was palpated, but otherwise, he was able to move the knee from side to side. During the assessment, plaintiff complained of left knee pain and reported difficulty ambulating. Nurse Scott

recommended extra strength Tylenol and ice per protocol and placed plaintiff on the nurse sick call for further assessment. During this encounter, Nurse Scott noted plaintiff understood how to seek additional medical care if the need arose. Nurse Scott next saw plaintiff at nurse sick call on December 10, 2018, at 3 p.m. Nurse Scott noted plaintiff complained of pain when his left knee was bent backwards and when the outer aspect of the knee was palpated, but otherwise, he was able to move the knee from side to side. Nurse Scott advised plaintiff to elevate his left knee when possible and for minimal weight bearing.

¶ 8    After Nurse Scott consulted with Dr. Lochard at 4:45 p.m. on December 10, 2018, Dr. Lochard entered orders to continue ice and Tylenol and directed plaintiff to be placed on the doctor sick call for follow up. Medical records from the jail indicate staff provided plaintiff Tylenol and ice between December 10 and December 13. According to defendants, plaintiff never reported that he was not receiving either Tylenol or ice.

¶ 9    On December 13, 2018, Dr. Lochard saw plaintiff during doctor sick call and examined plaintiff's left knee. After examining plaintiff, Dr. Lochard ordered X-rays of plaintiff's left knee. Dr. Lochard also entered orders to continue using (1) extra strength Tylenol twice a day for 14 days, (2) ice for 14 days, and (3) prednisone once a day for 2 days. Dr. Lochard further directed plaintiff be placed on doctor sick call for follow up in one week.

¶ 10    On December 14, 2018, plaintiff was transported to OSF St. Joseph Hospital for X-rays. According to Dr. Lochard, the X-rays did not reveal a fracture but did not rule one out. However, they did reveal an abnormality in plaintiff's lateral plateau. The next day, after reviewing the results of plaintiff's X-rays, Dr. Lochard entered orders for plaintiff to undergo a CT scan of his left knee, be non-weight bearing, and to use crutches and ice. He also referred plaintiff off-site to see an orthopedic specialist. The same day, after receiving Dr. Lochard's orders, Nurse Scott

contacted the sergeant on duty, and crutches were approved for plaintiff's use within the jail. Plaintiff was then given crutches and informed of Dr. Lochard's orders for non-weight bearing. During his deposition, plaintiff agreed Nurse Scott gave him instructions on how to use the crutches and that he was told not to bear weight.

¶ 11          On December 18, 2018, plaintiff was transported to McLean County Orthopedics, where Dr. Lucas Armstrong examined him. Dr. Armstrong noted positive findings of tenderness on the lateral side of plaintiff's knee, significant effusion, and limited range of motion. However, Dr. Armstrong did not make any formal diagnosis that day. Dr. Armstrong recommended plaintiff undergo an MRI, ordered over-the-counter nonsteroidal anti-inflammatory drugs and Tylenol, and allowed plaintiff to be weight bearing as tolerated.

¶ 12          Plaintiff underwent an MRI on December 27, 2018, and saw Dr. Armstrong again on February 8, 2019. The MRI revealed a lateral tibial plateau fracture, bony contusions of the medial tibial plateau and lateral femoral condyle, a small osteochondral injury, and a large joint effusion. Dr. Armstrong testified during his deposition that the findings on the MRI were not immediately apparent from the earlier X-ray. Based on the new findings, Dr. Armstrong ordered a cortisone injection and physical therapy. He further ordered plaintiff to be weight bearing as tolerated. Plaintiff received both the cortisone injection and physical therapy as ordered by Dr. Armstrong, but he did not find the physical therapy to be helpful. No doctor recommended any further treatment, and plaintiff was released in October 2019.

¶ 13                              B. Complaint

¶ 14          On December 9, 2019, plaintiff filed a complaint in the McLean County circuit court alleging professional negligence and negligence against defendants. In January 2020, defendants McLean County and the McLean County Sheriff removed the case to the United States

District Court for the Central District of Illinois, asserting federal question jurisdiction. On July 22, 2020, the district court dismissed the two counts of plaintiff's complaint that arose under federal law but declined to enter judgment on the remaining counts arising under Illinois law. Accordingly, plaintiff refiled the remaining Illinois law claims on December 9, 2020, under section 13-217 of the Illinois Code of Civil Procedure (Procedure Code) (735 ILCS 5/13-217 (2020)) (permitting a plaintiff to refile an action in the Illinois circuit court within one year after the dismissal of the action by a federal district court for lack of jurisdiction or improper venue)).

¶ 15        In plaintiff's initial eight-count complaint, he alleged, *inter alia*, both professional and ordinary negligence against Dr. Lochard. With respect to the professional negligence claim (count IV), plaintiff asserted Dr. Lochard breached his duty of care to plaintiff based on a variety of willful and wanton conduct. With respect to the ordinary negligence claim (count V), plaintiff claimed Dr. Lochard owed him a duty of ordinary care, which Dr. Lochard breached when he failed to (1) properly communicate with jail staff that plaintiff needed to elevate his left knee and bear minimal weight on it and (2) provide plaintiff with assistive equipment or instructions on how to keep weight off his injured knee.

¶ 16        In March 2021, defendant Dr. Lochard filed a motion to dismiss plaintiff's claims against him under section 2-615 of the Procedure Code (735 ILCS 5/2-615 (West 2020)). Specifically, Dr. Lochard asserted that Illinois courts do not recognize a separate claim for "willful and wanton" conduct, and therefore, plaintiff's count IV should be dismissed. On April 22, 2021, the circuit court dismissed, *inter alia*, both counts against Dr. Lochard without prejudice and with leave to refile. Specifically, the court found as follows:

"So Count [IV] alleges professional negligence. *** Count [V] alleges ordinary negligence. The Court concurs with [defendant Dr. Lochard's]

assessment, the only allegations as it's currently pled arise from the relationship of a physician to a patient. The only—based upon the current complaint, the only duty of care owed by Dr. Lochard would be within the context of a patient/physician relationship. There's no other relationship that is alleged here.

So the Court agrees that one count is appropriate. There may be some allegations I concur, [plaintiff's counsel], it is possible that don't require a physician to opine that it's outside the standard of care. It may be such that a layperson—that is a possible option. But in terms of the how the complaint is currently pled with two counts against the doctor and including language of willful and wanton conduct the Court will grant Defendant Lochard's motion to dismiss without prejudice, and the Court will grant leave to re-plead to the Plaintiff."

¶ 17    In April 2021, plaintiff filed a first amended complaint. Count I asserted a vicarious liability claim against McLean County arising from the acts of Nurse Scott. Count III asserted a negligence claim against the McLean County Sheriff for failing to (1) notify jail medical staff that plaintiff's condition was deteriorating, (2) elevate plaintiff's left knee, and (3) provide assistance to help plaintiff ambulate while he was under orders to bear minimal weight on his left knee. Count IV alleged professional negligence against Dr. Lochard for (1) failing to perform a more extensive examination of plaintiff's knee, (2) failing to diagnose plaintiff's condition, (3) failing to provide appropriate and proper care, (4) failing to execute his own treatment plan, (5) exposing plaintiff to further injury, and (6) causing plaintiff to suffer unnecessary pain as a result of the delay in treating his left tibial plateau fracture. Count VI asserted a claim for medical malpractice against Nurse Scott, alleging she breached her duty of professional care by failing to (1) properly execute her own plan of treatment when she did not communicate with the jail staff that plaintiff needed to

elevate his left knee and bear minimal weight and (2) provide plaintiff any equipment or instructions on how to keep weight off his injured knee from December 10, 2018, to December 14, 2018.

¶ 18      Nurse Scott's deposition was taken in June 2022, in which the following exchange occurred:

"Q. Can you describe what you meant by minimal weight bearing?

A. Well, the cells aren't very big. So if [plaintiff] had to toe touch just to weight bear minimally to get to the places that he needed to go, that would probably be good for him to do until he saw the doctor. So just bear weight as little as possible.

Q. And when you say 'toe touch,' as he is walking, just sort of like the big toe?

A. Mm-hmm. Just if, if he can hop on one foot you can do that, too. If you could hold onto the wall or the bench or the, you know, half walls that are in their cells, you can move around just on one foot."

¶ 19      On March 20, 2023, plaintiff disclosed expert Dr. Joseph Borrelli in response to Dr. Lochard's interrogatories. Plaintiff attached to his disclosure two letters signed by Dr. Borrelli. In the letters, Dr. Borrelli opined that a complete and extensive physical examination should have been performed and that by not conducting a proper examination and failing to correctly diagnose plaintiff's injury, the proper diagnosis was delayed. Dr. Borrelli also opined that the failures to both properly examine and diagnose plaintiff and execute the doctor's orders caused plaintiff to suffer severe and unnecessary pain and exposed him to further injury.

¶ 20      In September 2023, plaintiff's counsel took the deposition of the County

Defendants' nursing expert, Kathryn Wild, RN, in which the following exchange occurred:

"Q. So my first question is going to go into a little bit more detail. Have you ever told a patient to essentially hop on one leg or grab on to a wall while he was trying to ambulate?

A. Not necessarily. But I've told inmates that are complaining of pain to not do anything extra other than what they needed to, get up to the bathroom and go back to bed. That would be a pretty common instruction to give a patient is to not be up more than you have to be."

Later, when being questioned by the County Defendants' counsel, the following exchange occurred:

"Q. [Nurse Wild], based on your education, training, experience and review of the materials in this case, is it your opinion based on a reasonable degree of medical certainty that Suzanne Scott met the applicable nursing standard of care in rendering care to [plaintiff]?

A. Yes. She did exactly what a registered nurse is to do in those type of situations, yes.

Q. Based on your education, training, experience and review of materials in this case, is it your opinion based on a reasonable degree of medical certainty that Nurse Scott was not negligent for the medical needs of [plaintiff]?

A. Correct, she was not negligent."

¶ 21    In October 2023, plaintiff's counsel took the deposition of Dr. Lochard's expert, Dr. Grady Judson Bazzel, MD, in which the following colloquies occurred:

"Q. So when you see the patient for the first time, what are you—what

exams are you doing or what questions are you asking?

\* \* \*

A. Again, I would go over the mechanism of injury, the duration of symptoms, what makes the pain better, what makes the pain worse, any effects on his activities of daily living in a correctional setting. Then I would do a focused knee exam and formulate my plan of care with [plaintiff].

\* \* \*

Q. So based on the questions that you would have had for [plaintiff] and the things that you would have done on first meeting him, is that consistent with the things that Dr. Lochard noted when he met the patient for the first time?

A. The exam is fairly consistent with what I would do. I don't see the other elements that I mentioned as far as the history noted on this particular exam form.

\* \* \*

Q. I think I asked you—you said you don't see anything about the history and that you would have asked him about that during your first exam. So I'm trying to get out what are you asking [as] far as his history? What—

A. Well, again, I would ask about the mechanism of injury, duration of symptoms, alleviating and aggravating factors, and impact on [activities of daily living].

Q.: Okay. So I'm sorry. I'm just trying to tease out and make sure I understand you. So when you say you didn't see that, you're referring to those things that you didn't see in Dr. Lochard's note?

A. Yes, sir.

* * *

Q. Okay. We've looked at this before in regards to his sentence [*sic*]. The nurse gave him—and we're looking at December 10, 2018. *** At the bottom here on that note, it has 'minimal weightbearing.'

Can you explain what that instruction—when you give that instruction, what you're communicating to the patient?

A. That the patient should put as small of an amount of their total bodyweight on that, the affected joint as possible.

Q. So at this point in time, are you wrapping the knee or giving him crutches?

A. It depends. This [is] kind of where correctional medicine and community medicine veer off from one another. In some facilities, the use of ACE wraps, splints, crutches, canes, walkers are prohibited because of security issues. So it would depend on my exam and what was allowed in the facility.

* * *

Q. Okay. The nurse also gave—and I can look at the—I can pull that note up again if you want me to, but I don't think I need to for this. The nurse also asked the—asked [plaintiff] to elevate his leg if possible. What's the proper way to sort of elevate a leg in a—I guess in a situation like this?

A. Well, ideally, what you want is the affected joint above the level of your heart. So, typically, lie in bed, put your foot on the wall, and that will give you enough elevation to get your knee, in this case, above the level of the heart.

Q. Okay. And you could sort of use, you know, like, a folded up blanket or

a pillow, or something of that nature, as well; correct?

A. Probably wouldn't due to the amount of elevation that you need, but you could certainly use something like that to assist you.

Q. And when you say above the heart, you're saying that the ankle is slightly above the heart or the whole, like—

A. No. Whatever joint that you're concerned about. So in this case, it would be the knee would be above the level of the heart.

* * *

Q. When you get *** a treatment plan or some instructions from [an orthopedic specialist (ortho)], does that fall—are you sort of involved in that, or is that on the nursing staff at the jail to sort of implement?

A. *** More often than not, when a patient comes back from a subspecialist with recommendations, it's the physician's job to review those recommendations and then write subsequent orders that reflect those recommendations. So it's typically the MD since nurses can't practice medicine. They can't take those orders from the [ortho] and enact them. They have to go through, you know, the site medical director, the site physician.

Q. Okay. So I just want to make sure I got this straight. He's gone to ortho. Ortho has a treatment plan and some instructions. You're the one who then reviews those instructions, and then you give those instructions, based on what you think is appropriate, to the nursing staff?

A. That's the way I've always known it to happen, yes, sir."

¶ 22     During Dr. Lochard's deposition, he was questioned regarding the proper procedure

for elevating an injured extremity:

> "Q. There was a lot of questioning about the elevation of the knee. In your practice when you order someone to elevate, and not bedrest but elevate, we'll say a knee, is that your instruction for that person to do what they can to keep that knee elevated when they can?
>
> A. Yes. And a lot of people think that elevation means lifting your leg way up. Elevation just means keeping your leg at the hip level basically, the same level of your knee as sitting down. So a bed is sufficient for that. Have the leg on the bed, that's elevation."

¶ 23    At the close of discovery, all defendants moved for summary judgment. In moving for summary judgment, the County Defendants argued plaintiff failed to identify admissible expert testimony to establish the nursing standard of care or a breach of that standard with respect to his claim against Nurse Scott. Additionally, the County Defendants argued plaintiff's claims were barred by the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/1-101 *et seq.* (West 2022)) and that no evidence was presented sufficient to establish willful and wanton conduct. Dr. Lochard argued plaintiff failed to present expert testimony in support of all the elements of his claim against Dr. Lochard.

¶ 24                                C. Summary Judgment

¶ 25    Following a hearing on March 8, 2024, the circuit court granted summary judgment in favor of the County Defendants. Specifically, the court found the disclosures and correspondence from Dr. Borrelli were insufficient to preclude summary judgment because they were noncompliant with Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013) and failed to identify the standard of care, breach, and causation, stating as follows:

- 12 -

"I don't want to say there's magical language when there comes to medical negligence cases, but there's certainly some required language that requires one to get over the hump so to speak to establish a *prima facie* case and saying that something should have been done doesn't rise to that standard. There has to be some language identifying what the standard of care is. That wasn't done."

Furthermore, the court found that even if Dr. Borrelli's opinions were admissible, he was not qualified to testify regarding the standard of care applicable to nurses (*i.e.*, Nurse Scott). Additionally, the court determined section 4-105 of the Act (745 ILCS 10/4-105 (West 2022)) applied to count III against the McLean County Sheriff and plaintiff failed to present any evidence of willful and wanton conduct to establish an exception to defeat summary judgment. Finally, the court determined section 4-105 of the Act also applied to counts I and VI against Nurse Scott and McLean County, respectively, and that there was no willful and wanton conduct in the record that would preclude summary judgment against them on that theory. Moreover, plaintiff failed to disclose any expert qualified to testify regarding the standard of care applicable to Nurse Scott.

¶ 26        This appeal followed.

¶ 27                            II. ANALYSIS

¶ 28        On appeal, plaintiff argues the circuit court erroneously granted the County Defendants' motion for summary judgment and this court should therefore reverse and remand for further proceedings. Specifically, plaintiff claims the court erroneously (1) found Dr. Borrelli's disclosures insufficient to defend against defendants' summary judgment motions, (2) determined plaintiff was required to produce an affidavit in defense of summary judgment when defendants did not produce one in support of said motion, (3) found no genuine issue of material fact existed where defendants' expert Dr. Bazzel's testimony conflicted with Dr. Lochard's, (4) found the Act

barred plaintiff's claims against the County Defendants, (5) determined plaintiff was required to show willful and wanton conduct with respect to his claim against Nurse Scott, (6) concluded the exception set forth in *Wingo v. Rockford Memorial Hospital*, 292 Ill. App. 3d 896 (1997), did not apply in this case, (7) found no genuine issue of material fact existed where defendants' nurse expert's testimony conflicted with Nurse Scott's, (8) found plaintiff did not show the McLean County Sheriff's conduct was willful and wanton when it allegedly failed to provide plaintiff immediate medical attention following the incident leading to his injury, (9) dismissed counts IV and V of his initial complaint, and (10) found plaintiff's complaint failed to state a cause of action due to his use of "objectionable" words and phrases.

¶ 29　　　　The County Defendants respond the circuit court properly granted their motion for summary judgment and no errors occurred. Dr. Lochard responds the court properly (1) dismissed counts IV and V of plaintiff's initial complaint without prejudice and (2) granted his motion for summary judgment.

¶ 30　　　　We affirm in part and dismiss in part.

¶ 31　　　　　　　　　A. Review of Summary Judgment

¶ 32　　　　A party is entitled to summary judgment when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022). "A genuine issue of material fact exists 'where the material facts are disputed or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts.' " *Carney v. Union Pacific R.R. Co.*, 2016 IL 118984, ¶ 25 (quoting *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 49). In determining whether a genuine issue of material fact exists, the court is to construe the materials "strictly against the moving party and

liberally in favor of the opponent." *Id.* Whether a party is entitled to summary judgment is a question of law this court reviews *de novo*. *Id.*

¶ 33                           B. The Standard of Care

¶ 34        Plaintiff first argues the circuit court erroneously determined Dr. Borrelli's disclosures were insufficient on the grounds they failed to establish the standard of care, breach, and causation elements to support plaintiff's professional negligence claims against Nurse Scott and Dr. Lochard. Plaintiff contends Dr. Borrelli established all of these elements in his statements that "a complete and extensive physical examination of [plaintiff's] left knee should have been performed"; "Because Dr. Lochard and Nurse Scott failed to perform an appropriate and extensive physical exam of [plaintiff's knee], *** they failed to correctly and timely diagnose [plaintiff's] left tibial plateau fracture"; and "by failing to treat and diagnose [plaintiff's] injury[,] Nurse Scott and Dr. Lochard exposed [him] to further injury and unnecessary pain." Plaintiff further contends he was not required to present testimony from an expert in nursing to support his claim against Nurse Scott where Dr. Borrelli's disclosures and letters were sufficient under the exception set forth in *Wingo*.

¶ 35        The County Defendants and Dr. Lochard both argue Dr. Borrelli's statements were insufficient to establish the necessary elements of a professional negligence claim with respect to Nurse Scott and Dr. Lochard, respectively, and were nonetheless inadmissible hearsay and noncompliant with Rule 191(a). The County Defendants further argue the *Wingo* exception does not apply to Nurse Scott in this case.

¶ 36                           1. *Applicable Law*

¶ 37        In a professional negligence case, it is the plaintiff's burden to establish the following: "(1) proper standard of care against which the professional's conduct must be

- 15 -

measured; (2) negligent failure to comply with the standard; and (3) the injury had as one of its proximate causes the negligence of the professional." *Mengelson v. Ingalls Health Ventures*, 323 Ill. App. 3d 69, 74 (2001). "A plaintiff sustains her burden by proving, generally through expert testimony, that defendant's breach of the applicable standard of care is more probably than not the cause of plaintiff's injury." *Id.* "[A]t the summary judgment stage[,] the plaintiff must present affirmative evidence that the defendant's negligence was arguably a proximate cause of the plaintiff's injuries [citation]. If the plaintiff fails to do so, summary judgment is proper as a matter of law." *Wiedenbeck v. Searle*, 385 Ill. App. 3d 289, 292-93 (2008).

¶ 38                                    2. *Claim Against Nurse Scott*

¶ 39            The test for whether a medical expert is competent to testify on a given subject is well-settled in Illinois:

> "It must be established that the expert is a licensed member of the school of medicine about which he proposes to express an opinion [citation], and the expert witness must show that he is familiar with the methods, procedures, and treatments ordinarily observed by other physicians, in either the defendant physician's community or a similar community. [Citations.] Once the former requirement has been satisfied, 'it lies within the sound discretion of the trial court to determine if the witness is qualified [and competent] to [state his opinion] as an expert regarding the standard of care.' " *Purtill v. Hess*, 111 Ill. 2d 229, 243 (1986).

The supreme court explained the rationale for the first element of this test in *Dolan v. Galluzzo*, 77 Ill. 2d. 279, 284 (1979), as follows:

> "Illinois statutes [citations] provide for the regulation of practitioners of medicine and surgery, physical therapy, nursing, pharmacy, dental surgery,

- 16 -

podiatry, optometry, etc. This is a clear expression by the legislature of public

policy to recognize and regulate various schools of medicine. The various acts

regulating the health professions [citations] provide for different training, and

regulate the treatment each profession may offer. *** In its wisdom, the legislature

has recognized a fundamental tenet of contemporary life: no one person, group or

school has yet succeeded in abstracting a universal medical method from the many

changing methods used in science and medicine.”

¶ 40     However, in *Wingo*, 292 Ill. App. 3d at 906, the Second District found that an exception to the licensing requirement set forth in *Dolan* and *Purtill* may apply under certain factual circumstances. In that case, three expert physicians testified a nurse deviated from her standard of care when she failed to adequately communicate a pregnant patient’s condition to the treating physician. *Id.* at 903-04. As a result of this deviation, the experts opined, the patient’s child was born with brain damage. *Id.* On appeal, the Second District concluded the physician experts properly opined on the nurse’s deviation from the standard of care, despite not being qualified in the field of nursing, based on the following:

“[*Dolan*] indicate[s] that the reason for the [licensing requirement] is to prevent a

higher standard of care being imposed upon the defendant and to ensure that the

testifying expert has expertise in dealing with the patient’s medical problem and

treatment and that the allegations of negligence are within the expert’s knowledge

and observation. Those concerns have not been sacrificed here. In [this] case, the

allegations of negligence against [the] nurse did not concern a nursing procedure

but, rather, related to what a nurse is required to communicate to a physician about

what transpired since the physician last saw the patient. As such[,] the allegations

of negligence do not concern an area of medicine *** [where] there would be a different standard [of care] between [a] physician and another school of medicine. Furthermore, it was established that the allegations of negligence were well within the testifying doctors' knowledge and experience. We believe that a physician should be entitled to testify about what he or she is entitled to rely upon in the area of communication from a nurse in the context of an obstetrical team rendering care to a patient in a hospital." *Id.* at 906.

Illinois courts have since held the exception set forth in *Wingo* is limited; it merely "relieves a party of satisfying the licensing prong of the *Purtill* foundational test when the allegations of negligence concern communications between members of different schools of medicine acting as part of the same team." *Petre v. Cardiovascular Consultants, S.C.*, 373 Ill. App. 3d 929, 941 (2007); see *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 118-19 (2004).

¶ 41    Here, the circuit court did not err when it found Dr. Borrelli's disclosures insufficient to establish a standard of care, breach, or causation with respect to the professional negligence claim against Nurse Scott because Dr. Borrelli is not a qualified expert in the field of nursing as a matter of law and the *Wingo* exception is not applicable. The record shows Dr. Borrelli was a licensed physician working in the field of orthopedic surgery. While Dr. Borrelli may have been qualified to opine upon the standard of care applicable to other physicians in this field, there was no evidence showing he was qualified as an expert in the field of nursing. Furthermore, the record shows plaintiff failed to disclose any nursing expert testimony to support the necessary elements of his claim against Nurse Scott. Moreover, the narrow exception to the licensing requirement set forth in *Wingo* does not apply under these circumstances because plaintiff's claim against Nurse Scott did not concern *communications* between members of different schools of

medicine working as part of plaintiff's care team. Instead, plaintiff claimed Nurse Scott failed to implement minimal weight bearing orders and provide plaintiff with crutches. Accordingly, the court properly determined plaintiff failed to present affirmative evidence Nurse Scott's alleged negligence was arguably a proximate cause of his injuries.

¶ 42          3. *Vagueness and Inadmissibility of Dr. Borrelli's Disclosures*

¶ 43          Plaintiff further maintains the circuit court improperly concluded his disclosure of Dr. Borrelli and accompanying letters were both (1) too vague to establish the necessary elements of his claim against Dr. Lochard and (2) inadmissible to defend against defendant Dr. Lochard's summary judgment motion on the grounds they were unsworn as required by Rule 191(a), despite the fact Dr. Lochard did not produce an affidavit in support of his respective motion. Dr. Lochard responds the court properly concluded plaintiff failed to establish the standard of care and Dr. Borrelli's letters were inadmissible under Rule 191(a).

¶ 44          To establish the standard of care in a professional negligence case, it is not sufficient that the plaintiff "merely present[ ] expert testimony which offers an opinion as to correct procedure or which suggests, without more, that the witness would have conducted himself differently than the defendant. *** A difference of opinion between acceptable but alternative courses of conduct is not inconsistent with the exercise of due care." *Advincula v. United Blood Services*, 176 Ill. 2d 1, 24 (1996). Stated differently, " 'The testimony of other physicians that they would have followed a different course of treatment than that followed by the defendant, or a disagreement of doctors of equal skill and learning as to what the treatment should have been, does not establish negligence.' " *Walski v. Tiesenga*, 72 Ill. 2d 249, 262 (1978) (quoting *Versteeg v. Mowery*, 72 Wash. 2d 754, 758-59 (1967)).

¶ 45          As previously mentioned, a party is only entitled to summary judgment when "the

pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022). Further, as the First District explained in *Koulogeorge v. Campbell*, 2012 IL App (1st) 112812, ¶ 34, any evidence not admissible at trial is similarly inadmissible as support for, or in opposition to, a motion for summary judgment. Furthermore, when a party offers expert opinions in written form at the summary judgment stage, the writings in support or in opposition to the motion—including affidavits—must not only be sworn but must also comply with Rule 191(a). *Enbridge Pipeline (Illinois), LLC v. Kiefer*, 2017 IL App (4th) 150342, ¶ 40. In pertinent part, Rule 191(a) provides as follows:

> "Affidavits in support of and in opposition to a motion for summary judgment under section 2-1005 of the [Procedure Code] *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all documents upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013).

Accordingly, an expert witness's opinion offered in opposition to a motion for summary judgment must strictly comply with Rule 191(a) and must have attached thereto sworn or certified copies of all papers upon which the affiant relied. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 343 (2002). Although the affidavit need not be notarized, it must be signed by the affiant or his or her name must appear as the person who took the oath. *Id.* The purpose of these requirements is to prevent "lowering the bar" to allowing a party to avoid summary judgment whenever a party merely

produces an expert to support its position. *Id.* at 344. Essentially, our supreme court is "unwilling to allow the simple production of an expert's conclusion 'to become a free pass to trial.' " *Id.*

¶ 46 First, we agree with the circuit court plaintiff failed to establish the requisite standard of care with respect to his claims against Dr. Lochard. In reviewing plaintiff's Illinois Supreme Court Rule 213(f) (eff. Jan. 1, 2018) disclosures and the two letters from Dr. Borelli, these statements amounted to no more than opinions as to what Dr. Lochard should have done, rather than providing a definitive standard by which other professionals in Dr. Lochard's field should be measured. As noted above, it is not sufficient that a plaintiff merely provide expert testimony as to the correct procedure or that the expert would have conducted himself in a different manner.

¶ 47 Moreover, even assuming, *arguendo*, plaintiff established the requisite standard of care, plaintiff's reliance on his Rule 213(f) disclosures and Dr. Borrelli's letters in opposition to Dr. Lochard's summary judgment motion was improper because the disclosures and the letters failed to comply with Rule 191(a). Specifically, the record shows plaintiff's Rule 213(f) disclosures were signed by plaintiff's counsel—not Dr. Borrelli—and were not sworn to or adopted by Dr. Borrelli himself. Accordingly, such Rule 213(f) disclosures could not be construed as an affidavit compliant with Rule 191(a). Furthermore, although Dr. Borrelli's two letters *were* signed by Dr. Borrelli, there is no indication he took an oath swearing to the truth of their contents. Furthermore, it does not appear plaintiff provided certified copies of all the papers upon which Dr. Borrelli relied upon in forming his opinions. Thus, we must conclude Dr. Borrelli's two letters also failed to comply with Rule 191(a). Contrary to plaintiff's assertions, it is of no consequence whether Dr. Lochard's motion for summary judgment was supported by affidavit because the crux of Dr. Lochard's motion for summary judgment was that *plaintiff* failed to produce affirmative

evidence that Dr. Lochard's alleged negligence was arguably a proximate cause of plaintiff's injuries. See *Wiedenbeck*, 385 Ill. App. 3d at 292-93. It was therefore not necessary, under these circumstances, for defendants to present an affidavit demonstrating this failure. Because plaintiff failed to present Dr. Borrelli's opinions in compliance with Rule 191(a), he failed to present affirmative evidence in the form of expert testimony to arguably support his claims of professional negligence against Dr. Lochard.

¶ 48                                    C. Conflicting Testimony

¶ 49        Plaintiff also argues the circuit court erred when it concluded no genuine issue of material fact existed, despite the fact Dr. Bazzel's and Nurse Wild's testimony conflicted with that of Dr. Lochard and Nurse Scott, respectively. Specifically, plaintiff claims Nurse Wild's deposition testimony conflicted with Nurse Scott's when she stated that when implementing doctor's orders for a patient to be minimally weight bearing, she would not necessarily direct said patient to hop on one foot or use a wall to assist with ambulating. Plaintiff also maintains Dr. Bazzel's testimony conflicted with Dr. Lochard's when he indicated that an initial patient examination should include their history and elevating the knee means the knee should be positioned above the heart.

¶ 50        In response, the County Defendants contend Nurse Wild's allegedly conflicting testimony did not create a genuine issue of material fact where she ultimately opined Nurse Scott complied with the requisite standard of care and was not negligent. Dr. Lochard responds plaintiff is procedurally barred from relying upon Dr. Bazzel's deposition testimony because he failed to disclose him as an expert witness. Furthermore, nothing in Dr. Bazzel's testimony supported plaintiff's claims against Dr. Lochard or gave rise to a genuine issue of material fact for trial.

¶ 51        We conclude neither Dr. Bazzel's nor Nurse Wild's allegedly conflicting testimony

created a genuine issue of material fact sufficient to preclude summary judgment in favor of defendants.

¶ 52                                    1. *Applicable Law*

¶ 53        As provided above, summary judgment is appropriate only where the pleadings, depositions, admissions, and affidavits establish that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. See 735 ILCS 5/2-1005 (West 2022). "Material facts are facts that might affect the outcome of the case under the applicable substantive law." *Thai v. Triumvera 600 Naples Condominium Ass'n*, 2020 IL App (1st) 192408, ¶ 38. Furthermore, as also provided *supra*, " 'The testimony of other physicians that they would have followed a different course of treatment than that followed by the defendant, or a disagreement of doctors of equal skill and learning as to what the treatment should have been, does not establish negligence.' " *Walski*, 72 Ill. 2d at 262 (quoting *Versteeg*, 72 Wash. 2d at 758-59).

¶ 54                                       2. *Nurse Wild*

¶ 55        Here, Nurse Wild's deposition testimony regarding the implementation of minimal weight bearing orders did not create a genuine issue of material fact as to whether Nurse Scott deviated from the standard of care with respect to the minimal weight bearing orders. We acknowledge Nurse Scott testified she directed plaintiff to hop on his uninjured leg or use the wall to assist with ambulating, which Nurse Wild testified was not something she had "necessarily" ever directed a patient to do. Instead, Nurse Wild testified she had typically advised inmate patients with minimal weight bearing orders to "not do anything extra other than what they needed to." Despite plaintiff's assertions, these "conflicts" in the two nurses' testimony amounted to no more than "[a] difference of opinion between acceptable but alternative courses of conduct," which is not sufficient to establish that a health care professional arguably deviated from the standard of

care. *Advincula*, 176 Ill. 2d at 24. Indeed, Nurse Wild found no issue with Nurse Scott's implementation of the orders, concluding that, based on her review of the case materials and in her professional opinion, Nurse Scott complied with the appropriate standard of care and was not negligent. Accordingly, the circuit court properly concluded no genuine issue of material fact arose from Nurse Wild's conflicting testimony.

¶ 56                                    3. *Dr. Bazzel*

¶ 57          Assuming, *arguendo*, plaintiff was permitted to rely on Dr. Bazzel's deposition testimony despite not disclosing him as a witness, we similarly conclude the circuit court did not err when it concluded Dr. Bazzel's deposition testimony did not create a genuine issue of material fact for trial. Plaintiff, relying on the excerpts from Dr. Bazzel's deposition provided *supra*, claims this testimony established Dr. Lochard failed to comply with the standard of care when he did not collect plaintiff's patient history and provide appropriate instructions for elevating plaintiff's knee. Specifically, Dr. Bazzel testified he would have asked plaintiff about the mechanism of injury, duration of symptoms, alleviating and aggravating factors, and impact on activities of daily living, which he did not see in Dr. Lochard's notes. Furthermore, Dr. Bazzel indicated proper knee elevation should involve placing the knee above the heart, while Dr. Lochard testified knee elevation could be accomplished with the knee at hip level.

¶ 58          None of Dr. Bazzel's allegedly conflicting testimony creates a genuine issue of material fact which would preclude summary judgment in Dr. Lochard's favor. First, at no point did Dr. Bazzel testify that any action taken by Dr. Lochard constituted a deviation from the applicable standard of care. In his disclosures, Dr. Bazzel opined Dr. Lochard complied with the standard of care and that "[p]laintiff's past, present, and future injuries, pain complaints, and functional complaints are not the result of any negligent act or omission by Dr. Lochard." The

mere fact Dr. Bazzel indicated he would have asked more questions than Dr. Lochard did during plaintiff's examination and that he had a different opinion as to the proper way to elevate a knee does not establish that Dr. Lochard arguably breached the standard of care and proximately caused plaintiff's injuries. As noted above, "[a] difference of opinion between acceptable but alternative courses of conduct" between two qualified professionals, *i.e.*, Drs. Lochard and Bazzel, is not sufficient to show an arguable deviation from the standard of care. *Id.* Accordingly, the circuit court properly concluded Dr. Bazzel's testimony did not create a genuine issue of fact sufficient to preclude summary judgment in favor of Dr. Lochard.

¶ 59                                                    D. The Act

¶ 60              Plaintiff further claims the circuit court erred when it (1) concluded his claims against the County Defendants were barred under the Act, (2) determined plaintiff was required to show willful and wanton conduct with respect to his claim against Nurse Scott, and (3) found plaintiff failed to show willful and wanton conduct in support of his claim against the McLean County Sheriff. The County Defendants respond summary judgment in favor of the McLean County Sheriff was proper because plaintiff failed to identify any individual employee to establish negligent conduct and there was no evidence of willful and wanton conduct by the agency. The County Defendants further respond the Act applies to Nurse Scott, which required plaintiff to show willful and wanton conduct with respect to the claim against her and plaintiff failed to do so. Because we have already determined *supra* that Nurse Scott, and by extension, McLean County, were entitled to summary judgment on the ground plaintiff failed to establish the requisite standard of care with respect to nurses, we address only whether the court properly determined plaintiff failed to show willful and wanton conduct by the McLean County Sheriff. We conclude the circuit court's determination was proper.

¶ 61      The Act's purpose is to protect local public entities and public employees, under certain circumstances, from liability arising from the operation of government. 745 ILCS 10/1-101.1(a) (West 2022). Specifically, section 4-105 of the Act provides immunity to a public entity and its employees "for injury proximately caused by the failure to furnish or obtain medical care for a prisoner in his custody" but excludes cases where an employee "through willful and wanton conduct, fails to take reasonable action to summon medical care." *Id.* § 4-105. As used in the Act, "willful and wanton conduct" means "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." *Id.* § 1-210.

¶ 62      Here, we conclude the circuit court properly concluded (1) the McLean County Sheriff was immune from liability in this case and (2) plaintiff failed to demonstrate willful or wanton conduct by the agency that would preclude the application of immunity under section 4-105 of the Act. In reviewing the pleadings, admissions, and other discovery in this case, we have found nothing to support a claim that any correctional officer acted unreasonably in referring plaintiff to the jail's medical staff to address his left knee complaints and permitting the use of crutches as ordered by Dr. Lochard. The record shows—and plaintiff does not dispute—that he was under the care of the medical staff at the jail the day after he was taken into custody. There is no evidence suggesting any individual in the McLean County Sheriff's Office consciously disregarded plaintiff's request for assistance following his injuries. It is also undisputed plaintiff was placed on the sick call list and seen by Nurse Scott and Dr. Lochard during the next opportunity for sick call. Accordingly, we find plaintiff failed to arguably show willful or wanton conduct on behalf of the McLean County Sheriff and the court properly concluded the agency was immune from liability under the Act.

¶ 63                    E. Ordinary Negligence Claim and Willful and Wanton Conduct

¶ 64            Plaintiff also claims the circuit court erroneously dismissed counts IV and V of his initial complaint without prejudice. Specifically, plaintiff claims the court erroneously determined he could not proceed with both professional and ordinary negligence claims because (1) both claims arose out of the doctor-patient relationship and (2) Illinois does not recognize a separate claim for willful and wanton conduct. Plaintiff claims the court seemingly granted Dr. Lochard's motion on the ground the two claims were duplicative, even though that was not the basis for Dr. Lochard's motion. Moreover, plaintiff asserts he did not attempt to state a claim for "willful and wanton" conduct, but he instead used that language to support his claim of professional negligence. Dr. Lochard responds the court properly dismissed counts IV and V of the initial complaint without prejudice because they were improperly duplicative. Specifically, because both claims arose out of the doctor-patient relationship, the only duty Dr. Lochard owed to plaintiff arose from said relationship. We conclude this portion of plaintiff's appeal must be dismissed for lack of jurisdiction.

¶ 65            Even if not raised by either party, this court has an independent duty to determine its own jurisdiction and, if jurisdiction is lacking, to dismiss the appeal. *In re Marriage of Mardjetko*, 369 Ill. App. 3d 934, 935 (2007). Under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994), a litigant may appeal a final judgment of the circuit court as a matter of right. Generally, this court's appellate jurisdiction is limited to reviewing a final judgment that disposes of the rights of the parties, either on the entire case or on some definite and separate part of the controversy. *Department of Public Aid ex rel. K.W. v. Lekberg*, 295 Ill. App. 3d 1067, 1069 (1998). A judgment is final if it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment. *In re T.M.*, 302 Ill. App. 3d 33, 37 (1998). Illinois

courts have recognized that "[d]ismissals that are entered without prejudice are not final and appealable orders." *City of Naperville v. Illinois Fraternal Order of Police, Labor Council, F.O.P. Lodge No. 42*, 2013 IL App (2d) 121071, ¶ 14; see *DeLuna v. St. Elizabeth's Hospital*, 147 Ill. 2d 57, 76 (1992).

¶ 66       Here, we conclude this court lacks jurisdiction to review the circuit court's dismissal of counts IV and V of plaintiff's initial complaint because it did not constitute a final and appealable order. The record shows the circuit court dismissed counts IV and V of plaintiff's complaint without prejudice and with leave to amend. Even assuming, *arguendo*, the court's basis for dismissal was erroneous, plaintiff was free to refile and amend his claims. Moreover, the court's statements did not necessarily preclude plaintiff from refiling both professional and ordinary negligence claims; the court merely dismissed the claims as they existed in their current form. The court never advised plaintiff he had to choose one claim or the other. Although plaintiff attempted to "preserve" his objections to the dismissal of count V in his amended complaint, there was no issue to "preserve" where the court had not entered a final order with respect to that claim. Because the court's dismissal without prejudice on April 22, 2021, did not constitute a final and appealable order, this court lacks jurisdiction to review plaintiff's arguments on appeal pertaining to that order. Accordingly, we dismiss the portion of this appeal challenging the court's order dismissing counts IV and V of plaintiff's initial complaint without prejudice pursuant to section 2-615 of the Procedure Code.

¶ 67                                    III. CONCLUSION

¶ 68       For the reasons stated, we affirm the McLean County circuit court's judgment granting summary judgment in favor of defendants and dismiss the portion of this appeal challenging the court's dismissal of counts IV and V of plaintiff's initial complaint without

prejudice.

¶ 69          Affirmed in part and dismissed in part.